IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHAYQUAN QUANTAE MARSHALL,

 Petitioner,

v.            Civil Action No. 3:19CV655

HAROLD W. CLARKE,

 Respondent.

## MEMORANDUM OPINION

Shayquan Quantae Marshall, a Virginia inmate proceeding pro
se, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254
Petition," ECF No. 1) challenging his conviction in the Circuit
Court of the City of Richmond, Virginia (hereinafter "Circuit
Court") of possession of cocaine with intent to distribute, 3rd or
subsequent offense.  In his § 2254 Petition, Marshall argues that
he is entitled to relief on the following grounds:[1]

| | |
|---|---|
| Claim 1 | "The trial court erred in denying the motion to suppress the evidence flowing from an unreasonably delayed traffic stop." (ECF No. 1, at 5.) |
| Claim 2 | Ineffective assistance of counsel during trial and appellate proceedings:<br>(a)  Trial counsel failed raise the decision in United States v. Rodriguez, 135 S. Ct. 1609 (2015) and failed to argue that Marshall was not issued a traffic ticket. (ECF No. 1-1, at 4.) |

---

[1]  The Court corrects the capitalization, spelling, and
punctuation in quotations from Marshall's submissions.  The Court
employs the pagination assigned by the CM/ECF docketing system.

> (b)   Trial counsel failed to argue that there was no probable cause for a stop, that Marshall was subject to an unreasonable search and seizure, and apply the "tainted evidence of the fruit of the poisonous tree doctrine." (ECF No. 1-2, at 3, 4.)
>
> (c)   Appellate counsel failed to raise the arguments set forth in Claim 2(a).   (ECF No. 1-2, at 3, 6.)

Claim 3      The trial court violated Marshall's right to due process by allowing a police officer to interfere with a traffic stop initiated by another officer.   (Id. at 8.)

Claim 4      The trial court violated Marshall's rights under the Fourth Amendment because no traffic charges were filed against Marshall as a result of the traffic stop leading to his arrest on drug charges.   (Id. at 10.)

Claim 5      The trial violated Marshall's constitutional rights by sanctioning an unreasonable and unjustified search of his person.   (Id. at 12.)

Claim 6      The trial court erred in assuming officers did not violate Marshall's rights by searching him "beyond the required parameters of the PISTOL database."   (Id. at 17.)[2]

Claim 7      The state habeas court erred in dismissing Marshall's claims challenging the denial of the suppression motion at trial and on appeal. (Id. at 20.)

Respondent has moved to dismiss on the grounds that, inter alia: Claims 1 and 7 are not cognizable grounds for federal habeas relief; Claims 3, 4, 5, and 6 are procedurally defaulted; and the remaining claims lack merit.   (ECF No. 12, 14.)   Marshall has

---

[2]   PISTOL is a database that provides officers with a description of the suspect prior encounters with police.

responded.   (ECF No. 17.)   In his Response, Marshall contends that he can show cause to excuse his defaults, because any default is attributable to the ineffective assistance of counsel.   (Id. at 2-3.)   For the reasons set forth below, the Motion to Dismiss will be granted.

## I.   PERTINENT PROCEDURAL HISTORY

Following a conditional guilty plea, Marshall was convicted in the Circuit Court of possession of cocaine with intent to distribute (third or subsequent offense) and sentenced him to ten years of incarceration.   (ECF No. 14-1, at 1-2.)

### A.   Direct Appeal

On appeal, Marshall asserted that the trial court erred in denying his motion to "suppress because the officer unlawfully deviated from the stop in calling and assisting a K9 unit."   (ECF No. 14-2, at 1.)   That Court of Appeals of Virginia aptly summarized the pertinent facts in rejecting that challenge.   It is helpful to recite those facts and the legal findings of the Court of Appeals here because they provide context for many of Marshall's claims of ineffective assistance of counsel.[3]

> [T]he evidence reflects that on July 22, 2014 at approximately 11:30 a.m., Detective Milton was patrolling an area "known for having a lot of street-level narcotics."   A vehicle, driven by Marshall cut in

---

[3] The Court has altered the footnote number in the following quotation.   Other than the first alteration, the other alteration appear in the original opinion.

3

front of him.   Milton pulled Marshall's vehicle over for that traffic violation and for a dangling object hanging from his rearview mirror.   Detective Melton, who recognized Marshall from prior drug arrests, happened to be nearby and witnessed the stop.

Immediately after Milton stepped away from Marshall's vehicle to return to the patrol car, Melton, who was still in his patrol car, advised Milton of Marshalls criminal history.   He mentioned that Marshall likely had narcotics on his person, and recommended that Milton call a K9 unit.   Milton radioed for a K9 unit as he returned to his patrol vehicle.   In the patrol car, he began checking the information he had collected from Marshall.   Consistent with the information Melton had provided, Marshall's "PISTOL"[4] background check indicated that he was a "narcotics seller, user, probably armed, a gang member."

Officer Robinson arrived at the scene with her drug-detection dog within five minutes of Milton calling for a K9 unit.   At the time Robinson was dispatched at 11:37 a.m.,[5] she was a mile away.   She left the station at approximately 11:39 a.m.   When she arrived, Milton had not yet finished investigating the traffic infraction.   She spoke with Milton for approximately[6] a "couple of minutes" in order to determine where Milton wanted her to run the dog.   She removed the dog from the vehicle and it "immediately" alerted on the driver's side of the vehicle, where Marshall was seated with the window open.   The alert occurred at 11:44 a.m.   After the alert, Marshall admitted he had drugs on his person. Later, police found a clear plastic bag sewn into the

---

[4] "PISTOL" is a database that advises officers of the "nature of the contact" a suspect has had with the Richmond Police Department, any prior arrests, and whether the suspect might be armed.

[5] Robinson testified she did not know what time the request was received; she only knew the time she was dispatched to the scene.   However, Robinson's testimony regarding the time she was dispatched is consistent with Milton's recollection that she arrived no more than five minutes after he requested a K9 unit.

[6] On cross-examination, Robinson stated that she spoke with the officer at the scene for a "couple of minutes," "[g]ive or take a minute or two minutes."

fly of his shorts. The bag contained multiple individually-wrapped portions of a substance later determined to be crack cocaine.

## II. ANALYSIS

For Fourth Amendment purposes, Marshall was seized throughout the duration of the stop. "A 'seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.'" Matthews v. Commonwealth, 65 Va. App. 334, 344, 778 S.E.2d 122, 127 (2015) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). "The seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" Id. (alteration in original) (quoting Arizona v. Johnson, 555 U.S. 323, 333 (2009)). Marshall argues that Milton deviated from the traffic stop in three instances and that those deviations unlawfully prolonged the stop: (1) Milton's and Melton's conversation about Marshall's criminal history, (2) the delay attributed to Milton calling for a K9 unit, and (3) Milton's conversation with Robinson upon her arrival.

The stop here occurred prior to the United States Supreme Court decision in Rodriguez v. United States, 135 S. Ct. 1609, 1615 (2015) (holding that during a lawful traffic stop, a police officer "may conduct certain unrelated checks," but "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual"). At the time of the stop in this case, binding precedent stated that there was no Fourth Amendment violation if any deviations or delays unrelated to the traffic stop were "de minimis." Matthews, 65 Va. App. at 353, 778 S.E.2d at 132; Ellis v. Commonwealth, 52 Va. App. 220, 227, 662 S.E.2d 640, 643 (2008). Evidence obtained during a search conducted in reasonable reliance on binding precedent at the time is not subject to the exclusionary rule. Davis v. United States, 564 U.S. 229, 241 (2011) (describing this dimension of the "good faith" exception). Therefore, we may assume without deciding that any delay here was unlawful under Rodriguez, but nevertheless, the evidence should not be excluded so long as the delays unrelated to the traffic offense were "de minimis."[7]

---

[7] The trial court denied the motion to suppress because it found the stop lawful under Rodriguez. We

Whether the delays were de minimis presents "a mixed question of law and fact that we review de novo on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). We are "bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Matthews, 65 Va. App. at 341–42, 778 S.E.2d at 126 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)). After considering each alleged deviation individually, and then in their totality, we find that any extension of the stop caused by Milton's investigation of a suspected drug offense was only a de minimis delay. Thus, the evidence was admissible under the good faith exception to the exclusionary rule.

**A. Milton's conversation with Melton**

The record is silent as to the exact amount of time that Milton and Melton spoke. The trial court noted that either "just sort of in passing [Melton] yelled out to him" or "there was some discussion as [Milton] was travelling to the squad car." In either scenario, the conversation was limited in scope and duration. It also coincided with Milton's return to his patrol vehicle, which was part of the traffic stop. Furthermore, such a conversation advances the interest of protecting officer safety, given that Melton had prior experience with Marshall, and Marshall's PISTOL profile indicated he was "probably armed" and "a gang member." Ultimately, characterizing this conversation as akin to Milton checking Marshall's criminal history, the trial court ruled that the initial conversation with Melton was not a "deviation" from the traffic stop. We agree.

**B. Milton calling a K9 unit**

---

affirm the judgment not for that reason, but because this stop occurred prior to the Rodriguez decision and was lawful under then-existing law. Thus, the exclusionary rule does not apply. Debroux v. Commonwealth, 32 Va. App. 364, 371, 528 S.E.2d 151, 154 (2000) ("an appellate court may affirm the judgment of a trial court when it has reached the right result" for a reason other than the reason adopted by the appellate court (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992))).

Second, Marshall challenges the delay caused by Milton's call for a K9 unit. Viewing the evidence in the light most favorable to the Commonwealth, Milton had already placed the call before he returned to his patrol vehicle to run Marshall's information. Because he needed to return to the patrol car as part of the investigation into the traffic offense, the most reasonable inference, viewing the evidence as we must, is that his placing this call en route did not result in any measurable delay.

## C. Milton speaking with Robinson

Third, Marshall contends the traffic stop was interrupted when Milton got out of his vehicle and spoke with the K9 officer, Robinson, upon her arrival. The trial court ruled that there was "no evidence" that the time it took Robinson to arrive and speak with Milton "delayed Milton in any way or that that didn't coincide with the reasonable time that Milton took to do his traffic investigation." We cannot say this factual finding is plainly wrong or unsupported by the evidence. Furthermore, Robinson testified that this conversation was quite limited in scope—confined solely to determining where Milton wanted her to run the dog. Viewing the evidence in the light most favorable to the Commonwealth, the conversation was at most two minutes long.

## D. The alleged deviations as a whole

Even if each alleged deviation, by itself, was de minimis, we must consider their collective effect on the duration of the stop. Milton stopped Marshall at approximately 11:30 a.m. The record does not specify exactly how long Milton spoke with Melton, but shortly after the exchange, Milton called for a drug dog. Robinson was contacted by dispatch at 11:37 a.m. She left from a police station approximately one mile away at roughly 11:39 a.m. When she arrived shortly thereafter, Milton had nearly finished checking Marshall's information for the traffic offense. Robinson spoke with Milton briefly "to find out what they want me to run," which she estimated lasted a minute or two. She then removed her dog from her vehicle. The dog "immediately" alerted to the vehicle at 11:44 a.m. The investigation into the traffic offense had not concluded before the dog alerted.

In sum, over the course of an approximate fourteen-minute period between the beginning of the stop and the dog alerting, at most two to three minutes were

7

attributable to investigating the suspected narcotics offense. Although no binding case law presents these precise facts, persuasive guidance indicates that this is a de minimis intrusion. See United States v. Mason, 628 F.3d 123, 132 (4th Cir. 2010) (finding that "one to two of the 11 minutes devoted to questioning on matters not directly related to the traffic stop constituted only a slight delay that raises no Fourth Amendment concern"); United States v. Alexander, 448 F.3d 1014, 1017 (8th Cir. 2006) (upholding four-minute extension of a twenty-minute stop); United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005) (stating that a "two minute delay . . . is a de minimis intrusion on the driver's personal liberty that does not violate the Fourth Amendment"); United States v. Purcell, 236 F.3d 1274, 1279 (11th Cir. 2001) (affirming a three-minute delay during fourteen-minute stop as de minimis).

In Matthews, this Court addressed an analogous set of facts. During the course of a traffic stop, the officer asked Matthews questions unrelated to the traffic offense, on topics such as his travel history, criminal background, and whether his tattoos were "prison tattoos." The officer also questioned Matthews about drug use and why he appeared nervous. After taking Matthews's information, the officer returned to his cruiser to check it and to call a K9 unit. The officer spent only "twenty to thirty seconds" speaking with Matthews about his prison tattoos, and only about "ten seconds" calling the drug dog. We did not tally the total time devoted to "non-traffic citation" deviations out of the total duration of the stop, but emphasized that the "unrelated questions 'were given in fairly quick order'" and that "the 'whole process [was] just a matter of minutes.'" Matthews, 65 Va. App. at 353, 778 S.E.2d at 132. We concluded that the deviations were unlawful under Rodriguez, but were de minimis, and therefore lawful, prior to Rodriguez. Accordingly, the exclusionary rule did not apply. Id.

The delays here are similar to those in Matthews, consisting of two brief conversations and a request for a K9 unit. Viewing the evidence in the light most favorable to the Commonwealth, these delays amounted to, at most, two to three minutes. Accordingly, because "the 'whole process [was] just a matter of minutes,'" id., the deviations from the total length of the traffic stop were de minimis. Because the search was lawful under the prevailing law of the time, the exclusionary

rule does not apply, and the trial court did not err in denying Marshall's motion to suppress.

### III. CONCLUSION

The trial court did not err in denying Marshall's motion to suppress, because any deviation from the traffic stop was <u>de</u> <u>minimis</u>, and thus falls within the good faith exception to the exclusionary rule.

<u>Marshall v. Commonwealth</u>, No. 2053-15-2, 2016 WL 7094219, at *1-*4 (Va. Ct. App. Dec. 6, 2016). Marshall pursued a further appeal to the Supreme Court of Virginia raising the same issues. (ECF No. 14-3, at 3.) The Supreme Court of Virginia refused Marshall's petition for appeal. (<u>Id.</u> at 1.)

### B. State Habeas

On state habeas, in the Circuit Court, Marshall raised the following claims for relief:

(a)(i) The Commonwealth violated petitioner's Due Process rights by allowing a police officer to interfere with the traffic stop initiated by another officer;
(a)(ii) The Commonwealth violated petitioner's Fourth Amendment rights because no traffic charges were ultimately filed against the petitioner as a result of the traffic stop leading to his arrest on drug charges;
(b)(i) The Commonwealth violated petitioner's constitutional rights by executing an unreasonable and unjustified search of his person;
(b)(ii) The Commonwealth violated petitioner's constitutional rights by searching him "beyond the required parameters of the PISTOL database";
(c)(i) The Commonwealth and the trial court violated petitioner's rights by failing to suppress the evidence against him in accordance with Rodriguez;
(d)(i) Appellate counsel was ineffective for not knowing about and raising the issues raised in this habeas petition on appeal, in particular the fact that Marshall was never ticketed for a traffic violation; and
(d)(ii) The Court of Appeals erred in finding that the petitioner's case was not controlled by Rodriguez.

(ECF No. 14-5, at 19 (internal citation omitted).)   The Circuit Court dismissed Marshall's claims, finding that:  Claims (a)(i), (a)(ii), (b)(i), and (b)(ii) were barred by the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) because they could have been, but were not, raised at trial and on direct appeal; Claims (c)(i) and (d)(ii) were fully litigated on direct appeal and would not be considered on habeas; and that the remaining claim, (d)(i) lacked merit.  (Id. at 20-25.)

Marshall appealed that decision to the Supreme Court of Virginia.  The Supreme Court of Virginia refused the petition for appeal.  (ECF No. 14-6, at 1).  In doing so, the Supreme Court of Virginia found that assignment of error number 3, 4, 5, and 6 were insufficient in that they did not address the Circuit Court's ruling on state habeas "from which an appeal is sought."   (Id. (citing Va. Sup. Ct. R. 5:17(c)(1)(iii).)[8]

---

[8]  In his petition for appeal, Marshall described these assignments of error as follows:

> 3.   Did the trial court err by violating the petitioner's due process rights by allowing a police officer to interfere with the traffic stop initiated by another officer.
> 4.   Did the trial court err by violating the petitioner's 4th Amendment right to due process because no traffic charges were filed against the petitioner that led to his arrest on drug charges.
> 5.   Did the trial court err in not dismissing charges for unreasonable and unjustifiable search of his person by violating his 4th Amendment right for lack of probable cause.

## II.   EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   The exhaustion requirement "'is rooted in considerations of federal-state comity,'" and in the Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)).   The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."   Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).   Exhaustion has two aspects.

First, a petitioner must use all available state remedies before he can apply for federal habeas relief.   See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999).   On that point (use of all available state remedies), the statute notes that a habeas

---

6.   Did the trial court err in assuming that officers did not petitioner's constitutional rights by searching him beyond the required parameters of the PISTOL database.

(ECF No. 14-6, at 7.)   These assignments correspond to Claims 3, 4, 5, and 6 in the § 2254 Petition.

petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate opportunity to address the constitutional claims advanced on federal habeas. "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his [or her] claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "both the operative facts and the controlling legal principles" must be presented to the state court. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that, "[i]f a state court clearly and expressly bases its dismissal of

a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his [or her] federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his [or her] claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1).[9] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

Here, the Supreme Court of Virginia found that Claims 3, 4, 5, and 6 were barred under Virginia Supreme Court Rule 5:17(c)(1)(iii) because they did not point to an error the Circuit Court on state habeas. Rule 5:17(c)(1)(iii) constitutes and

---

[9] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

adequate and independent rule when so applied. <u>Yeatts v. Angelone</u>, 166 F.3d 255, 264-65 (4th Cir. 1999).[10] Furthermore, to the extent that Marshall contends that ineffective assistance of counsel constitutes cause to excuse his default. That contention is rejected for the reasons set forth below. <u>See infra</u> Part V. Accordingly, Claims 3, 4, 5, and 6 will be dismissed.

### III. NONCOGNIZABLE CLAIMS

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976) (footnote omitted). "The rationale for the Court's ruling was that, in the context of a federal habeas corpus challenge to a state court conviction, 'the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of the application of the rule persist with special force.'" <u>United States v. Scarborough</u>, 777 F.2d 175, 182 (4th Cir. 1985) (quoting

---

[10] The Supreme Court of Virginia could have also found Claims 3 through 6 barred by the rule in <u>Slayton v. Parrigan</u>, 205 S.E.2d 680 (Va. 1974), because Marshall could have raised, but failed to raise, such claims on direct appeal. <u>Slayton</u> constitutes an adequate and independent state procedural rule when so applied. <u>See Mu'Min v. Pruett</u>, 125 F.3d 192, 196-97 (4th Cir. 1997).

*Stone*, 428 U.S. at 494-95). Therefore, in a habeas proceeding, when a federal district court is faced with Fourth Amendment claims, it should "first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice." Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978).

Because Virginia provided Marshall with an opportunity to raise his Fourth Amendment claims at trial and on appeal, this Court need not inquire further "unless [Marshall] alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." Id. The United States Court of Appeals for the Fourth Circuit has admonished that "the burden of pleading and proof is upon [the petitioner] to indicate in the petition . . . the reasons he has, and the facts in support thereof, as to why he contends he did not receive an opportunity for a full and fair litigation of his Fourth Amendment claims." Id. at 1266.[11] Marshall fails to

---

[11] Marshall contends that he was not given a fair opportunity to litigate his Fourth Amendment claims because the Virginia courts failed to correctly apply the controlling law. This contention is insufficient to undermine the fact Marshall was provided a fair opportunity to raise his Fourth Amendment claims. On that point, the Fourth Circuit has emphasized that "the ultimate rule of deference" contemplated by Stone "would of course be swallowed if impairment in this sense could be shown simply by showing error—whether of fact or law—in the state court proceeding." Sneed v. Smith, 670 F.2d 1348, 1355-56 (4th Cir. 1982). Thus, in Sneed, the Fourth Circuit rejected the petitioner's claim that allegedly false testimony by a police

demonstrate that he did not receive a full and fair opportunity to litigate his Fourth Amendment claims. Accordingly, Claim 1 will be dismissed.

In Claim 7, Marshall contends that he is entitled to relief because the Circuit Court improperly dismissed his claims for relief on state habeas. But, "[c]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief." Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted). That is because the habeas petitioner's detention results from the underlying state conviction, not from the state post-conviction collateral proceeding. Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." (citing Bryant, 848 F.2d at 493; Bel-Bey v. Roper, 499 F.3d 752, 756 (8th Cir. 2007); United States v. Dago, 441 F.3d 1238, 1248 (10th Cir. 2006))). Accordingly, Claim 7 will be dismissed.

---

officer and the application of incorrect constitutional standards constituted an impairment of his opportunity for full and fair litigation of his Fourth Amendment claim. Id. at 1356.

## IV.  APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).  Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v.

Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

### V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

In Claim 2(a), Marshall contends that trial counsel was ineffective for not raising the decision of United States v. Rodriguez, 135 S. Ct. 1609 (2015) in his motion to suppress and

18

failed to argue that Marshall was not issued a traffic ticket. This claim lacks factual merit. Counsel specifically and repeatedly cited to United States v. Rodriguez, 135 S. Ct. 1609 (2015) in his Motion to Suppress and noted that "the defendant was never charged with any traffic related offense." (ECF No. 14-7, at 4.) Accordingly, Marshall fails to demonstrate that counsel acted deficiently. Moreover, Marshall fails to demonstrate that any further argument by counsel related to these matters would have altered the result of the Motion to Suppress. Because Marshall fails to demonstrate deficiency or prejudice, Claim 2(a) will be dismissed.

In Claim 2(b), Marshall initially contends that trial counsel acted deficiently by failing to argue that there was no probable cause to stop him. This aspect of Claim 2(b) lacks factual merit. The record reflects that John Mann, who initially represented Marshall, "challenged the probable cause to stop the defendant's vehicle. On March 12, 2015, [the Circuit Court] ruled that there was probable cause to stop the defendant." (ECF No. 14-7, at 1 n.1.)

In the remainder of Claim 2(b) and 2(c), Marshall makes a disjointed, rambling argument that trial and appellate counsel performed deficiently by failing to raise a variety of challenges

to the search and seizure of his person.   These arguments lack merit for the reasons set forth by the Circuit Court:[12]

> The Court finds that the additional constitutional claims asserted by the petitioner are without merit and, if raised by counsel, would not have led to a different result. . . .  First contrary to his allegation in in Claim (a)(i) Marshall has no due process right to only interact with a single police officer at a time.  Next, the fact that Marshall was not ultimately summonsed for failing to yield to oncoming traffic when he turned left in front of a police officer, as alleged in claim (a)(ii) does not retroactively invalidate the traffic stop. Even if the petitioner was ultimately not in violation of any traffic law, the "possibility of an innocent explanation does not necessarily exclude the reasonable suspicion that a suspect might be violating the law." Morris v. City of Virginia Beach, 58 Va. App. 173, 183, 707 S.E.2d 479, 483 (2011) (internal quotation omitted). The Court concludes that neither of these claims presents a viable appellate argument, and therefore counsel was not ineffective for failing to make these claims on direct appeal.
>
> The Court further finds that neither claim (b)(i) nor (b)(ii) contains viable appellate arguments.  In these claims, the petitioner challenges the search of his person.  The Court finds that search was valid because a trained police dog alerted to the presence of drugs on the petitioner, which gave the officers probable cause to search his person.  See Whitehead v. Commonwealth, 278 Va. 300, 314 683 S.E.2d 299, 305 (2009) ("After the positive alert by the trained narcotics detection dog, [the officer] unquestionably had probable cause to search the vehicle"); Jones v. Commonwealth, 277 Va. 171, 180, 670 S.E.2d 727, 732-33 (2009) ("[A] positive alert from a narcotics detection dog unquestionably provides probable cause to search a vehicle.").  Therefore, the Court concludes that neither claim (b)(i) or (b)(ii) would have been successful on appeal.

---

[12] Although the Circuit Court addressed Marshall's challenges in the context of Marshall's claim of ineffective assistance of appellate counsel, the Circuit Court's conclusions largely apply with equal force to Marshall's challenges to the ineffectiveness of trial counsel.

> Under these circumstances, Marshall has not met his
> burden to prove there is a reasonable probability that,
> but for counsel's alleged errors in failing to present
> any of these claims . . . the result of the proceeding
> would have been different.

(ECF No. 14-5, at 24-25 (internal paragraph numbers omitted).)   In

no instance has Marshall demonstrated that trial or appellate

counsel acted deficiently by failing to advance the challenges he

urges here.   Nor does Marshall demonstrate any reasonable

probability of a different result had counsel made the argument he

suggests.   Accordingly, because Marshall fails to demonstrate

deficiency or prejudice, Claims 2(b) and 2(c) will be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss

(ECF No. 12) will be granted.   Marshall's § 2254 Petition will be

denied.   Marshall's claims and the action will be dismissed.   A

certificate of appealabilty will be denied.

The Clerk is directed to send a copy of Memorandum Opinion to

Marshall and counsel of record.

It is so ordered.

                                   /s/ _____

                                   Robert E. Payne
                                   Senior United States District Judge

Richmond, Virginia
Date:  July  7  , 2020